UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DUKE HENDERSON, | ) |
|           Plaintiff, | ) |
| v. | ) No. 2:25-cv-00241-JPH-MKK |
| PABLO PEREZ, et al., | ) |
|           Defendants. | ) |

**ORDER DISMISSING COMPLAINT AND DIRECTING FILING OF AMENDED COMPLAINT**

Plaintiff Duke Henderson is a prisoner currently incarcerated at Putnamville Correctional Facility ("Putnamville"). He filed this civil action alleging that he was subjected to retaliation and poor medical care by 12 defendants. Because Mr. Henderson is incarcerated, this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c). Before doing a substantive screening of the claims presented, however, the Court assesses "whether joinder is proper under Rule 20 before considering the merits" of the claims as required by 28 U.S.C. § 1915A. *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022).

**I. The Complaint**

Mr. Henderson's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). Mr. Henderson names the following defendants: (1) Dr. Pablo Perez, (2) Nurse Sarah Snowden, (3) Medical Assistant Alisha Eder, (4) Putnamville Warden Tricia Pretorious,

1

(5) Lt. Kirkland, (6) Sgt. Thrasher, (7) Officer Bice, (8) Officer Draughn, (9) Officer Pebbles, (10) Defendant Laban, (11) Sgt. Fagorie, and (12) John Doe.[1]

In the fall of 2023, Mr. Henderson was housed in Putnamville's medical dorm. Officer Pebbles tended to use the inmates' restroom facilities, which Mr. Henderson and other inmates found odd because officers usually used a staff restroom.

On August 22, 2023, Mr. Henderson asked Officer Pebbles in a non-threatening way why he used the inmates' restroom, and Officer Pebbles responded that he could use it whenever he wanted and that if Mr. Henderson is so bothered, he should write a grievance. Mr. Henderson responded, "Maybe I will." Dkt. 1 at 4.

Upon hearing that response, Officer Pebbles immediately called an emergency signal and wrote a false conduct report stating that Mr. Henderson threatened to "beat his ass" if Officer Pebbles returned to the inmates' restroom. *Id.* Mr. Henderson said the false conduct report was retaliation for Mr. Henderson stating he might file a grievance.

Officer Bice was the first to respond to the emergency signal, and he immediately told Mr. Henderson to cuff up. Mr. Henderson asked why he was being placed in restraints, and Officer Bice pulled out his OC spray. Officer Bice also wrote a false conduct report accusing Mr. Henderson of threatening him.

---

[1] Officer Pebbles, Defendant Laban, John Doe, and Sgt. Fagorie are not listed as defendants in the caption or parties section of the complaint, but Mr. Henderson refers to them as defendants in the body of the complaint. Construing his complaint liberally, the Court discusses the claims against them.

Again, Mr. Henderson believed Officer Bice was motivated by retaliatory animus because he had not threatened Officer Bice; rather, Officer Bice had threatened him with the pepper spray.

Mr. Henderson was placed in a restraint chair and brought to a segregation unit. Upon his arrival, Mr. Henderson told Sgt. Thrasher that Mr. Henderson was not supposed to be in disciplinary segregation due to his disability and his confinement to a wheelchair. Rather, disabled inmates should be placed in an isolation cell within the healthcare unit. When Mr. Henderson asked nearby nurses why he was being sent to segregation, they told him it was up to custody staff.

During Mr. Henderson's stay in disciplinary segregation between August 22 and August 27, he was exposed to insects, rodents, and terrible heat. Mr. Henderson began to suffer from symptoms of heat exhaustion, including delusions, and he raised concerns with both custody staff and medical staff including Nurse Snowden. The staff would tell Mr. Henderson to drink water and lay down, or they would ignore him entirely.

At one point, Mr. Henderson was experiencing a delusion when Officer Laban, Sgt. Fagorie, and Officer John Doe arrived at his cell and ordered him to cuff up. Mr. Henderson was apparently found on the floor of his cell with a sheet around his neck. Sgt. Fagorie sprayed Mr. Henderson with OC spray. Officer Draghn and Officer Doe[2] helped the officers with forcefully removing Mr. Henderson from his cell. The officers removed Mr. Henderson's clothes and

---

[2] It is not clear if there were two John Doe officers or one at this particular scene.

3

placed him in a cell naked without providing him a decontamination shower for about an hour. Defendants laughed and told him, "You think you had a bad day, just wait and see how bad of a night you're going to have." Dkt. 1 at 6. The pain from the OC spray was exacerbated by the fact that Mr. Henderson had open ulcers.

Mr. Henderson was eventually placed in a suicide watch cell for three days. During this time, he received no medical care. Mr. Henderson blames Dr. Perez for his lack of treatment because he is the head medical director at Putnamville and determines who receives care.

On August 31, Mr. Henderson was removed from the suicide watch cell and placed back in the cell in the segregated housing unit. That day he received a conduct report for threatening Officer Pebbles and Officer Bice.

Disciplinary Hearing Board Officer Dinius found Mr. Henderson guilty of the conduct report and deprived him of 50 days' good credit time and a class reduction that affected when Mr. Henderson would be eligible for a time cut.

Mr. Henderson's placement in segregation affected his medical condition. Nurse Snowden, Lt. Kirkland, and Medical Assistant Alisha confiscated Mr. Henderson's wheelchair despite there being no change in his medical condition for which it had been prescribed. He believes they confiscated the wheelchair in retaliation for his grievances for complaining about his medical treatment. Although Mr. Henderson does not specify what his medical condition is, he states that he suffers from open and festering ulcers, inflammation, neuropathy, and recurring viruses that could result in him losing his limbs or sight or even result

4

in his death. Medical Defendants Perez, Snowden, and Alisha have refused to reissue the wheelchair or adjust his medications.

## II. Discussion of Claims

District courts are encouraged to review complaints to ensure that unrelated claims against different defendants do not proceed in a single lawsuit. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012) ("[T]he district court should have rejected [plaintiff's] attempt to sue 20 defendants in a single lawsuit raising claims unique to some but not all of them.") (citing *Wheeler v. Wexford Health Sources*, Inc., 689 F.3d 680, 683 (7th Cir. 2012)); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). The plaintiff is not permitted to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Federal Rules of Civil Procedure 18 and 20 guide the Court's analysis. Rule 20(a)(2) permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "[M]ere overlap between defendants is not enough." *Thompson v. Bukowski*, 812 F. App'x 360, 363 (7th Cir. 2020).

5

Once Rule 20 is satisfied, "[a] party asserting a claim . . . may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a); *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (court must apply Rule 20 before Rule 18). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Mr. Henderson's complaint cannot proceed as currently presented. The complaint violates Rule 20, as it advances unrelated claims against separate defendants based on separate events. His factual allegations provide a coherent narrative, but the resulting claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Moreover, there is no common question of law or fact that ties together the various claims against all defendants. Fed. R. Civ. P. 20(a)(2)(B).

Here, the Court perceives Mr. Henderson's claims to fall under four groups:

- Group 1: Retaliation claims against Officers Pebbles and Bice concerning the false conduct report and a due process claim against Officer Dinius as it relates to the conduct hearing resulting in the loss of credit time;

- Group 2: Conditions of confinement and ADA claims against Sgt. Thrasher, Nurse Snowden and correctional staff[3] related to the heat,

---

[3] It is not clear which correctional officers were involved in monitoring the conditions of Mr. Henderson's cell during this timeframe.

6

rodents, and insects while Mr. Henderson, a person with a disability, was in the segregation cell from August 22 to August 27;

- Group 3: An Eighth Amendment excessive force claim against Officer Laban, Sgt. Fagorie, and Officer John Doe related to the OC spray incident;

- Group 4: Eighth Amendment deliberate indifference for inadequate medical care claims and First Amendment retaliation claims against Dr. Perez, Nurse Snowden, Lt. Kirkland, and Medical Assistant Alisha concerning his lack of medical care while he was in segregation and the confiscation of his wheelchair (and ongoing inadequate medical care) in retaliation for filing grievances about his medical care.

### III.   Dismissal and Deadline to Amend

Where a plaintiff has filed a complaint that violates Rule 20, the Seventh Circuit has suggested that the best approach is to explain the problem, dismiss the complaint without prejudice, and provide leave to amend. *Dorsey*, 55 F.4th at 1107 ("We suggest a district court faced with misjoined claims begin, as the district court did here, by striking the complaint, explaining the misjoinder, and giving the plaintiff at least one chance to fix the problem."). The Court will follow this approach here.

Accordingly, the complaint is **stricken** for failure to comply with Rule 20. Mr. Henderson shall have **through February 27, 2026**, to file an amended complaint that complies with Rule 20. If Mr. Henderson wants to pursue claims

7

identified in the other groups, he shall file a "motion to sever" that identifies what other groups of claims he wants to pursue. If so, the Court will open new cases and will provide Mr. Henderson time to file an amended complaint that relates to the claims in that specific group. If he does not, any claims that are not in his amended complaint will be dismissed without prejudice.

If Mr. Henderson files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If no amended complaint is filed, this action may be dismissed without further notice or opportunity to show cause.

Any amended complaint should have the proper case number, 2:25-cv-00241-JPH-MKK, and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it must set out every defendant, claim, and factual allegation Mr. Henderson wishes to pursue in this action.

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury. The **clerk is directed** to include a copy of the prisoner civil rights complaint form along with Mr. Henderson's copy of this Order, which he must use if he files an amended

8

complaint. *See* Local Rule 8-1 (requiring pro se plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

## IV. Conclusion

Mr. Henderson's complaint is stricken because it contains misjoined claims. Mr. Henderson has **through February 27, 2026**, to file an amended complaint that complies with Rule 20. He should also file a separate "motion to sever" if he wants to pursue other claims in separate actions. Failure to comply with this order may result in the dismissal of this action. *Dorsey*, 55 F.4th at 1104 (noting that courts may dismiss an action for failure to prosecute if a plaintiff fails to comply with valid orders).

**SO ORDERED.**

Date: 1/30/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DUKE HENDERSON
114427
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135